**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Maria Diaz**</u>

       **v.**                           Case No. 14-cv-137-PB
                                            Opinion No. 2015 DNH 174

<u>**U.S. Social Security**</u>
<u>**Administration,**</u>
<u>**Acting Commissioner**</u>

**MEMORANDUM AND ORDER**

Maria Diaz challenges the Social Security Administration's denial of her claim for disability insurance benefits ("DIB") and supplemental Social Security income ("SSI").  The Social Security Commissioner, in turn, seeks to have the ruling affirmed.

**I.   BACKGROUND**

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts (Doc. No. 15).  See LR 9.1.  Because this statement is part of the court's record, I need not recount it here.  Facts relevant to the disposition of this matter are discussed as necessary below.

**II.   STANDARD OF REVIEW**

42 U.S.C. § 405(g) authorizes me to review the pleadings

submitted by the parties and the administrative record and enter
a judgment affirming, modifying, or reversing the "final
decision" of the Commissioner.  My review "is limited to
determining whether the ALJ used the proper legal standards and
found facts [based] upon the proper quantum of evidence." Ward
v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).
Findings of fact made by the ALJ are accorded deference as long
as they are supported by substantial evidence.  Id.  Substantial
evidence to support factual findings exists "'if a reasonable
mind, reviewing the evidence in the record as a whole, could
accept it as adequate to support his conclusion.'" Irlanda
Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st
Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health &
Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the
substantial evidence standard is met, factual findings are
conclusive even if the record "arguably could support a
different conclusion."  Id. at 770.  Findings are not
conclusive, however, if they are derived by "ignoring evidence,
misapplying the law, or judging matters entrusted to experts."
Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).
The ALJ is responsible for determining issues of credibility and
for drawing inferences from evidence in the record.  Irlanda
Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the
court, to resolve conflicts in the evidence.  Id.

### III.  <u>ANALYSIS</u>

Maria Diaz is a 44-year-old woman who suffers from a number of physical and mental conditions.  She applied for disability insurance benefits and supplemental security income in 2009. Her claims were denied after two hearings before an Administrative Law Judge ("ALJ") in 2011 and again in 2012.  In 2013, the Appeals Council vacated the denial and remanded Diaz's case to a different ALJ.

After holding a third hearing and receiving further evidence, the ALJ concluded at step two that Diaz has multiple severe medically determinable impairments, including anxiety disorder, depressive disorder, attention deficit disorder, a history of substance abuse, hypertension, heart disease, anemia, fibromyalgia, and obesity.  <u>See</u> Tr. at 17.  After determining that Diaz's impairments did not meet any of the step-three listed impairments, and that Diaz could not perform her past relevant work, the ALJ found at step five that Diaz has the residual functional capacity ("RFC") to perform work in the national economy.  <u>See</u> Tr. at 19, 21-22, 30-31.

Diaz argues that remand is required for four reasons: (1) because the ALJ failed to properly consider her fibromyalgia symptoms in accordance with Social Security Ruling ("SSR") 12-2p; (2) because the ALJ made improper assignments of weight to

various physicians who opined on her physical limitations; (3)
similarly, because the ALJ made improper assignments of weight
to various physicians who opined on her mental limitations; and
(4) because the ALJ improperly discounted certain non-medical
sources who provided opinions that support Diaz's claim.  I
address each argument in turn.

A.   **Compliance with SSR 12-2p**

First, Diaz argues that the ALJ "did not follow the
guidelines set forth in SSR 12-2p for the proper evaluation of
fibromyalgia."  Doc. No. 10-1 at 9.  At step two, however, the
ALJ recognized fibromyalgia as one of Diaz's severe medically
determinable impairments.  Tr. at 17.  Beyond this, Diaz offers
no specific explanation of how the ALJ actually deviated from
SSR 12-2P, providing instead only vague and conclusory
assertions that the ALJ somehow failed to "properly consider the
symptoms of fibromyalgia as described in SSR 12-2p."  Doc. No.
10-1 at 10.  Diaz mounts no challenge to the ALJ's step-three
finding that Diaz does not meet any listed impairment, and she
makes no creditable argument that the ALJ's subsequent RFC
determination does not comply with SSR 12-2p.  Nor could she,
since SSR 12-2p makes clear that even in the presence of
fibromyalgia, an ALJ must conduct both listing and RFC analysis
"as with any adult claim for disability benefits."  SSR 12-2p,
2012 WL 3104869 (July 25, 2012), at *2 - *3.  Although Diaz

makes much of the fact that the ALJ's decision does not cite SSR 12-2p, that omission does not establish reversible error in the absence of any showing that the decision is materially inconsistent with the regulation.  See Anderson v. Colvin, No. 14-CV-15-LM, 2014 WL 5605124, at *1, *11 (D.N.H. Nov. 4, 2014) ("[D]espite the ALJ's failure to directly cite SSR 12-2p, he complied with it.")  Because Diaz has made no such showing, her argument based on SSR 12-2p is without merit.  See id.

**B.    Physical Limitations**

In her RFC finding, the ALJ determined that Diaz has the following physical limitations:

> [Diaz] has the residual functional capacity to perform light work...except [Diaz] is able to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; to stand and/or walk for up to 6 hours in an 8 hour work day with normal breaks; and to sit for up to 6 hours in an 8-hour workday with normal breaks...She is unable to climb ladders, ropes or scaffolds and must avoid hazardous work activity (unprotected heights, operating machinery, etc.).  Tr. at 21-22.

In reaching her determination of Diaz's physical limitations, the ALJ placed substantial weight on the opinions of Dr. Burton Nault, a state agency physician who reviewed the record in December 2009, and independent medical expert Dr. Joseph Gaeta, who testified at the hearing that the ALJ held in September 2012.  Tr. at 27-28.  The ALJ attached only limited weight, however, to the opinions of Dr. Ralph Wolf, a consulting

physician, and treating sources Dr. Jonathan Mazur and Dr.
Angelica Gonazalez.  Tr. at 28-29.  Diaz contests each of these
assignments of weight.

    1.  <u>Dr. Gaeta</u>

Dr. Gaeta is a cardiologist and internal medicine
physician.  He testified at the September 2012 hearing by
telephone.  Based on his review of Diaz's records, he concluded
that Diaz could perform a full range of light work.

Diaz argues that the ALJ impermissibly extended substantial
weight to Dr. Gaeta for two reasons.  First, she contends that
Dr. Gaeta is principally a cardiologist; she notes that Dr.
Gaeta estimated at the hearing that his practice was "75/25
cardiac," Tr. at 95.  Dr. Gaeta's experience, she maintains,
enabled him to offer only a "narrow evaluation of the evidence."
Doc. No. 10-1 at 13.  But Diaz has suffered from cardiac
problems in the past, rendering Dr. Gaeta's experience as a
cardiologist relevant to her claim.  <u>See</u> Tr. at 23-24.  And in
any event, Dr. Gaetz is board-certified in internal medicine.
Tr. at 94-95.  He is qualified to provide a medical opinion
based on Diaz's records regardless of his particular area of
specialization.

Diaz also emphasizes a point in Dr. Gaeta's testimony when,
after being asked a question about fibromyalgia, he qualified
his answer by explaining, "[T]hat's sort of going out of my area

of expertise."  Tr. at 110.  That testimony, Diaz argues,
establishes that Dr. Gaeta is unqualified to evaluate the
symptoms of a fibromyalgia patient.  The context of this
testimony, however, makes clear that Dr. Gaeta offered informed
opinions about fibromyalgia, and his comment, which Diaz
isolates from context, was meant only to professionally qualify
that testimony.  <u>See</u> Tr. at 109-10.  Beyond this, the ALJ was
entitled to credit Dr. Gaeta's testimony based on Dr. Gaeta's
qualifications and on the ALJ's own assessment that Dr. Gaeta's
testimony corresponded with the other evidence in the record.
<u>See</u> Tr. at 23, 27.  Diaz, therefore, establishes no error that
the ALJ made by placing substantial weight with Dr. Gaeta's
opinion.

    2.  <u>Dr. Nault</u>

    Dr. Nault reviewed Diaz's record in December 2009 and
concluded that, at that point, Diaz could perform a full range
of light work.  Tr. at 991-98.  Diaz observes that Dr. Nault's
opinion does not, and could not, reflect findings and other
evidence incorporated into her medical record after 2009.  Thus,
she contends, Dr. Nault's opinion is "based on an incomplete
record, when later evidence supports greater limitations."  Doc.
No. 10-1 at 15.  But the ALJ did not rely solely on Dr. Nault's
opinion.  Instead, he placed substantial weight with <u>both</u> Dr.
Gaeta's <u>and</u> Dr. Nault's opinions in reaching his RFC

determination of Diaz's physical limitations.  As the ALJ noted, Dr. Gaeta's opinion, which was rendered in 2012, aligned with Dr. Nault's opinion.  See Tr. at 28.  Both opinions, therefore, provide substantial evidence that supports the ALJ's physical limitation findings, and the ALJ made no error by placing substantial weight with either physician.

    3.  Dr. Wolf

    Dr. Wolf examined Diaz in October 2009 and concluded that she was physically unable to work.  See Tr. at 980-82.  The ALJ assigned only limited weight to Dr. Wolf's opinion, however, explaining that Dr. Wolf's assessment "fails to note any specific function-by-function limitations and/or to indicate any medically documented objective findings and/or test results that serve as the basis to support his assessment."  Tr. at 28. Although Diaz objects to this assignment of weight, the record supports the ALJ's view.  For instance, Dr. Wolf listed Diaz's HIV and hepatitis C as her primary impairments, see Tr. at 980, 982, but Diaz's medical records indicated that those conditions remained under good control, see Tr. at 28 (citing evidence in record supporting this conclusion).  As the ALJ also noted, Dr. Wolf determined that Diaz's hypertension and cardiomegaly were treatable and that Diaz's prognosis was good.  See Tr. at 28, 982.  Finally, Dr. Gaeta testified that he disagreed with Dr.

Wolf's opinion.  Tr. at 102-03.  These facts justified the ALJ's assignment of limited weight to Dr. Wolf.

    4.  <u>Dr. Mazur</u>

Dr. Mazur, a treating physician, provided two opinions that both support Diaz's claim.  In June 2012, he opined that Diaz was incapable of gainful employment.  Tr. at 1447.  The ALJ extended only limited weight to this opinion, however, noting that "Dr. Mazur [had] fail[ed] to note any objective findings to support his assessment," that his opinion was "rendered subsequent to a one-time examination of the claimant," and that the opinion was "inconsistent with the medical evidence of record as a whole."  Tr. at 28.  These reasons amply support the ALJ's placement of limited weight with Dr. Mazur's June 2012 opinion.

In July 2012, Dr. Mazur completed a medical source statement in which he concluded that Diaz "has specific functional limitations that comport with an ability to perform a limited range of sedentary exertion work."  <u>See</u> Tr. at 28.  As the ALJ noted, however, the July 2012 opinion was at least partially "inconsistent with medically documented findings noted throughout [Diaz's] treatment records, including recommendations made by other treating providers who encourage regular daily activity and exercise."  Tr. at 28 (citing Tr. at 1762).  That inconsistency independently justifies the ALJ's decision to

extend limited weight to Dr. Mazur's July 2012 opinion.  See
Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222
(1st Cir. 1981) ("[T]he resolution of conflicts in the evidence
. . . is for [the ALJ], not for the doctors or for the
courts.").  Diaz takes issue with the ALJ's second reason for
discounting the July 2012 opinion – namely, the ALJ's conclusion
that the opinion "fails to note any objective findings to
support [Dr. Mazur's] assessment."  Tr. at 28.  That conclusion,
Diaz argues without further elaboration, "completely overlook[s]
the proper analysis of fibromyalgia . . . as described in SSR
12-2p."  Doc. No. 10-1 at 17.  But as before, Diaz articulates
no specific way in which the ALJ's conclusion contradicts SSR
12-2p, and I can otherwise discern no such contradiction.  I
conclude, therefore, that the ALJ made no error by assigning
limited weight to Dr. Mazur's opinions.

    5.  Dr. Gonzalez

    Dr. Gonzalez, Diaz's rheumatologist, concluded in June 2012
that Diaz had the capacity for a limited range of sedentary
exertion work that involves no postural activity and only
occasional reaching and handling.  See Tr. at 1458-62.  The ALJ
gave Dr. Gonzalez's opinion only limited weight, however, after
concluding that it was inconsistent with the record, unsupported
by objective findings, and contradicted by Diaz's "own reported
level of activity during the period under review."  Tr. at 29.

Although Diaz argues that these "were not good reasons," Doc. No. 10-1 at 18, these reasons more than justify the ALJ's assignment of weight.  In particular, Diaz herself had reported that, during the relevant period, she was able to cook, do housework, shop, and watch her granddaughters.  See Tr. at 612-14, 987.  The ALJ was entitled to conclude from these self-reported activities that Diaz was not as limited as Dr. Gonzalez suggested.  Thus, the ALJ made no error in her assignment of limited weight to Dr. Gonzalez.

## C.   Mental Limitations

In her RFC finding, the ALJ concluded that Diaz has the following mental limitations:

> [Diaz] is able to perform uncomplicated tasks and is able to maintain concentration, persistence and pace for 2-hour periods of time throughout the course of an 8-hour workday consistent with regularly scheduled breaks and lunch.  Her pace would be reduced, but productivity would be within customary tolerance.  She is able to collaborate with supervisors on routine tasks.  Tr. at 22.

In reaching her mental RFC determination, the ALJ placed significant weight on the opinion of state agency psychologist Dr. Patricia Salt and limited weight on the opinions of consulting psychologist Dr. Stephanie Lynch and treating psychiatrist Dr. Philip Santora.  Diaz challenges each of these assignments of weight.

1.   <u>Dr. Salt</u>

In January 2010, Dr. Salt, a state agency psychologist, reviewed Diaz's record to date and opined on Diaz's mental limitations.  The ALJ extended significant weight to Dr. Salt's opinion and effectively adopted the findings made by Dr. Salt in the narrative portion of her opinion as her own mental RFC finding. <u>See</u> Tr. at 29, 999-1016.

Diaz raises several arguments against the ALJ's placement of significant weight on Dr. Salt's opinion.  First, she suggests, again without elaboration, that Dr. Salt in fact identified more mental limitations than the ALJ recognized in her RFC determination.  Doc. No. 10-1 at 20.  I take this suggestion to refer to the summary conclusions portion of Dr. Salt's opinion.  <u>See</u> Tr. at 1013-14.  But the ALJ appears to have drawn her mental RFC findings from the narrative portion of Dr. Salt's opinion, as she was entitled to do.  <u>See</u> McGrath v. Astrue, No. 10-CV-455-JL, 2012 WL 976026, at *15-16 (D.N.H. Mar. 22, 2012).  Second, Diaz claims that Dr. Salt conceded that she had "insufficient evidence" when she rendered her opinion.  <u>See</u> Doc. No. 10-1 at 18; Tr. at 999, 1011, 1015.  Here, however, Diaz again cherry-picks language from context, which makes clear that Dr. Salt acknowledged only that she had insufficient evidence to evaluate a period <u>prior to</u> Diaz's modified onset date.  <u>See</u> Tr. at 1011, 1015.  She did not suggest that she had

insufficient evidence to evaluate the period <u>after</u> the modified onset date, which is the only relevant period for purposes of her present claim.

Finally, Diaz argues simply that other record evidence is more persuasive than Dr. Salt's opinion and that the ALJ should have deferred to that evidence.  None of the record evidence subsequent to Dr. Salt's opinion, however, calls Dr. Salt's opinion into serious question.  Thus, this argument lacks any force under the standard of review that governs here, and I reject it accordingly.  See <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam) (holding that a court "must affirm [the Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

   2.   <u>Dr. Lynch</u>

Dr. Lynch examined Diaz in 2009 and concluded that she suffered from more limitations than the ALJ acknowledged in her mental RFC finding.  The ALJ extended only limited weight to this opinion, a determination that Diaz contests.  Tr. at 29. But as the ALJ noted, Dr. Lynch appears to have based her conclusion that Diaz "would not be able to maintain attendance and a schedule," Tr. at 988, solely on Diaz's own claim that she rarely goes out.  <u>See</u> Tr. at 988.  Evidence in the record,

however, suggests that Diaz regularly leaves home to shop and
attend medical appointments, undermining Diaz's own claim and,
by extension, the credibility of Dr. Lynch's assessment.  See
Tr. at 610-14.  In response, Diaz points to other evidence in
the record suggesting that she does miss appointments and
otherwise have difficulty in maintaining a schedule.  Doc. No.
10-1 at 20, 21.  But at most, Diaz's argument establishes a
conflict in the evidence that fell within the ALJ's province to
resolve. See Rodriguez, 647 F.2d at 222. Consequently, the ALJ
made no error by assigning only limited weight to Dr. Lynch.

     3.  Dr. Santora

     In December 2011, Dr. Santora, a treating psychiatrist,
also concluded that Diaz suffers from more mental limitations
than the ALJ acknowledged in her mental RFC determination.  Tr.
at 29-30.  The ALJ assigned only limited weight to this opinion.
Id.  Diaz argues that the ALJ erred by doing so for two reasons.
First, Diaz notes that the ALJ discounted Dr. Santora's opinion
in part because "his own treatment notes fail[] to reveal
evidence of medically documented findings and/or a history of
treatment that is consistent with the assessed degree of
functional limitation."  Tr. at 29.  Diaz objects that the ALJ
"omitted those sections of [Dr. Santora's] and other treatment
notes that supported [Dr. Santora's] opinion."  Doc. No. 10-1 at
22.  But an ALJ need not address every item in the record to

satisfy the substantial evidence standard.  See Lord v. Apfel,
114 F. Supp. 2d 3, 13 (D.N.H. 2000) (citing cases supporting
this).  The ALJ's decision makes clear that she reviewed the
records pertaining to Dr. Santora's treatment of Diaz and gave
them proper consideration.  See Tr. at 29-30.  Although Diaz
points to certain treatment notes and other evidence that could
support her claim, the ALJ also pointed to substantial evidence
in the record that justified her decision to extend only limited
weight to Dr. Santora.  See id.  Again, therefore, Diaz
establishes at most a conflict in the evidence that fell within
the ALJ's province to resolve.  See Rodriguez, 647 F.2d at 222.

Diaz's second argument reprises a familiar theme: that "the
treating and examining medical expert opinions on RFC were based
upon more complete evidence," Doc. No. 10-1 at 22 (emphasis in
original), and therefore required the ALJ to defer to them.
This argument amounts only to an attempt to advocate a different
conclusion from the same set of facts, which the governing
standard here precludes.  See Rodriguez Pagan, 819 F.2d at 3.
Otherwise, Diaz has pointed to no actual error made by the ALJ
in assigning weight to any of the medical sources at issue here.

**D.   Non-Medical Sources**

Diaz argues that the ALJ failed to properly consider a
number of non-medical opinions in the record.  First, she
contends that the ALJ improperly discounted the testimony of

Zena Ramirez, Diaz's caseworker from the HIV Task Force.
Ramirez testified that Diaz was forgetful, easily confused, and
unable to finish tasks and that she needed help to complete
paperwork for social services.  <u>See</u> Tr. at 85-86.  The ALJ
considered this testimony but gave it only limited weight,
finding that it was at least partially "inconsistent with
opinions offered by medical professionals with greater
expertise."  Tr. at 30.  This conclusion fell well within the
ALJ's discretion.  It is well established that an ALJ may extend
more weight to medical source opinions than to non-medical
source opinions.  <u>See</u> SSR 06-03p, 2006 WL 2329939, at *5 (Aug.
9, 2006).  Beyond this, the ALJ provided a reasoned explanation
for why she declined to extend more weight to Ramirez.  <u>See</u> Tr.
at 30.  Diaz again argues without explanation that the ALJ's
determination somehow ran afoul of SSR 12-2p, but I have already
explained why this argument is unavailing.  Otherwise, Diaz
points to no persuasive reason why the ALJ's determination was
improper.

Second, Diaz protests that the ALJ did not consider
evidence offered by Taisha Cuevas, Diaz's 19-year-old daughter,
and from the Director of the HIV Task Force.  <u>See</u> Tr. at 649,
894-96.  The duty to consider relevant evidence, however,
extends only to evidence that could support the claimant's
position.  <u>See</u> Lord, 114 F. Supp. 2d at 14.  Although Cuevas'

letter expresses support for Diaz, Diaz does not explain how it would meaningfully support her claim for disability benefits. See Tr. at 649.  The letter from the HIV Task Force was sent in 2006, nearly three years before Diaz's amended onset date, and warns Diaz that she was in danger of losing her housing.  See Tr. at 894-96.  Again, Diaz does not explain how this letter would support her claim of disability.  I conclude, therefore, that the ALJ committed no reversible error by omitting mention of this evidence from her decision.

## IV.  CONCLUSION

For these reasons, I grant the Commissioner's motion to affirm her decision (Doc. No. 12) and deny Diaz's motion to reverse (Doc. No. 10).  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

September 14, 2015

cc: Janine Gawryl, Esq.
    T. David Plourde, Esq.